**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TIMOTHY ATWOOD and PHOEBE GRANADO,<br><br>               Plaintiffs,<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION, successor by merger to FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>               Defendant. | CIVIL ACTION<br><br>No. 2:24-cv-01127-RJC<br><br>**FEDERAL EXPRESS CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION ON MISJOINDER AND CHANGE OF VENUE** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT .......................................................................................................... 2

I.      THE COURT SHOULD SEVER PLAINTIFFS' CLAIMS DUE TO
MISJOINDER .................................................................................................. 2

      A.      Plaintiffs Do Not Satisfy Rule 20's Permissive Joinder Standard ......................... 3

            1.      Plaintiffs do not assert any right to relief with respect to or arising
out of the same transaction or occurrence ................................................... 4

            2.      No question of fact is the same for both Plaintiffs because the facts
do not arise from the same transaction or occurrence ................................ 8

      B.      The Third Circuit's Discretionary Factors Favor Severance ................................. 8

      C.      After Decertification, Plaintiffs' Claims Should Be Severed ............................. 10

II.     ONCE SEVERED, THE COURT SHOULD TRANSFER PLAINTIFFS' CASES ........ 13

# TABLE OF AUTHORITIES

## CASES

*Acevedo v. Allsup's Convenience Stores, Inc.*,
  600 F.3d 516 (5th Cir. 2010) ................................................................. 2, 10, 11

*Adams v. City of Los Angeles*,
  No. CV1405685DMGFFMX, 2015 WL 13916597
  (C.D. Cal. Apr. 6, 2015) .................................................................................8

*Affymetrix, Inc. v. Synteni, Inc.*,
  28 F. Supp. 2d 192 (D. Del. 1998) ...............................................................14

*Alvarado v. City of Los Angeles*,
  720 F. App'x 889 (9th Cir. 2018) ............................................................11, 12

*Alvarez v. City of Chicago*,
  605 F.3d 445 (7th Cir. 2010) ........................................................................10

*Bedwell v. Amdocs, Inc.*,
  No. C 13-5565 SI, 2014 WL 3670550
  (N.D. Cal. July 23, 2014)..............................................................................12

*Blake v. Batmasian*,
  No. 15-81222-CIV, 2016 WL 7447253
  (S.D. Fla. Sept. 15, 2016) .........................................................................8, 12

*Bozek v. Wal-Mart Stores, Inc.*,
  No. 15-CV-10, 2015 WL 3818984
  (N.D. Ill. June 17, 2015)...............................................................................12

*Coughlin v. Rogers*,
  130 F.3d 1348(9th Cir. 1997) ........................................................................8

*Fox v. Tyson Foods, Inc.*,
  519 F.3d 1298 (11th Cir. 2008).....................................................................10

*Gatewood v. Koch Foods of Mississippi, LLC*,
  No. 3:07CV82-KS-MTP, 2009 WL 8642001
  (S.D. Miss. Oct. 20, 2009) .......................................................................8, 12

*Glendora v. Malone*,
  917 F. Supp. 224 (S.D.N.Y. 1996)..................................................................2

*Grayson v. K Mart Corp.*,
  79 F.3d 1086 (11th Cir. 1996) ........................................................................3

*Halle v. W. Penn Allegheny Health Sys. Inc.,*
    842 F.3d 215 (3d Cir. 2016) ..................................................3

*Henderson v. Mahally,*
    639 F. Supp. 3d 481 (M.D. Pa. 2022) ...................................2, 3, 8, 9

*Idasetima v. Wabash Metal Prods., Inc.,*
    No. 01-197, 2001 WL 1526270
    (E.D. Pa. Nov. 29, 2001) ..................................................14

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3d Cir. 1995) ...........................................13, 14

*Razak v. Uber Techs., Inc.,*
    No. 16-573, 2024 WL 3584324
    (E.D. Pa. Jul. 30, 2024) ...................................................9

*Roller Bearing Co. of Am. v. Am. Software, Inc.,*
    570 F. Supp. 2d 376 (D. Conn. 2008) ......................................15

*Sabolsky v. Budzanoski,*
    457 F.2d 1245 (3d Cir. 1972)................................................3

*Scott v. Chipotle Mexican Grill, Inc.,*
    954 F.3d 502 (2d Cir. 2020) ................................................3

*Stewart Org., Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988) .......................................................13

*Vanegas v. Signet Builders, Inc.,*
    113 F.4th 718 (7th Cir. 2024) ..............................................4

*Visendi v. Bank of Am., N.A.,*
    733 F.3d 863 (9th Cir. 2013) ...............................................3

*White v. ABCO Eng'g Corp.,*
    199 F.3d 140 (3d Cir. 1999) ...............................................2

*Yerger v. Liberty Mut. Grp., Inc.,*
    No. 5:11-CV-238-D, 2012 WL 4423499
    (E.D.N.C. Sept. 24, 2012).................................................4

**STATUTES**

28 U.S.C. § 1404...............................................................13

**RULES**

Fed. R. Civ. P. 20...........................................................3, 4, 8

Fed. R. Civ. P. 21 ................................................................................................1, 2

Fed. R. Civ. P. 43 ....................................................................................................15

Fed. R. Civ. P. 45 ....................................................................................................15

LCvR 40 .....................................................................................................................1

Plaintiffs Timothy Atwood and Phoebe Granado opted into *Claiborne v. FedEx Ground Package System, Inc.*, No. 2:18-cv-01698-RJC (W.D. Pa.) ("*Claiborne*"), in 2020. On April 30, 2024, after years of similar cases being denied Rule 23 and conditional certification, and a similar case being granted decertification, Plaintiffs' counsel voluntarily moved for decertification of the collective. (*See Claiborne*, ECF No. 523.) On May 2, 2024, the Court decertified the collective, dismissing without prejudice all 30,000+ opt-ins, including Atwood and Granado. (*See id.*, ECF No. 526.)[1]

For reasons unexplained, Atwood and Granado now bring their claims together in a single action. The only commonality between them is that FedEx took their depositions as discovery opt-ins in *Claiborne* (along with several dozen other opt-ins and Plaintiffs). That is where the commonality ends. Neither worked for the same Service Provider at any time. Atwood worked solely as a driver for two different Service Providers in Tennessee, with his last day driving in September 2019. Granado worked for and drove for two different Service Providers in Texas, and, upon information and belief, stopped working for her second Service Provider in September 2024.

There is nothing that ties these two Plaintiffs' claims together. Thus, pursuant to Federal Rule of Civil Procedure 21, the Court should sever each Plaintiff's claims to avoid prejudice and minimize juror confusion. Relatedly, the Court should transfer the cases to the more appropriate,

---

[1] FedEx notes that this case is pending before Judge Colville based on Plaintiffs' designation that this case is related to *Claiborne*. (*See* Case Designation Sheet, ECF No. 1-1.) By filing this motion, FedEx does not concede relatedness and maintains that this action neither involves the same issue of fact nor grows out of the same transaction as the *Claiborne* action. *See* LCvR 40(D)(2). However, given that FedEx has also filed a motion on misjoinder and change of venue in *Claiborne* (ECF No. 553), it seems appropriate that Judge Colville decide both motions for the convenience of the parties and to save judicial resources.

convenient forums where the witnesses—for all parties—are available and subject to the subpoena power of the court.[2]

ARGUMENT

## I.    THE COURT SHOULD SEVER PLAINTIFFS' CLAIMS DUE TO MISJOINDER

"The district court has broad discretion in ruling on a motion [to sever] brought under Rule 21," *Glendora v. Malone*, 917 F. Supp. 224, 227 (S.D.N.Y. 1996), especially when severance "facilitate[s] judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims," *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010). "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Severance of a claim under Rule 21 "creates independent actions resulting in separate judgments." *Henderson v. Mahally*, 639 F. Supp. 3d 481, 486 (M.D. Pa. 2022); *see White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999).

Neither Rule 21 nor the Third Circuit have set standards by which district courts determine if parties are misjoined, so courts look to the Rule 20 joinder standard and a series of other factors. *See Henderson*, 639 F. Supp. 3d at 486-87. Under Rule 20, permissive joinder is proper when the following elements are met: (A) the plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of <u>the same transaction, occurrence,</u>

---

[2] If the Court were to deny this motion, FedEx does intend to move for separate trials under Rule 42(b) later in the case, after discovery is close to complete. While some discovery was conducted as to these two individuals in *Claiborne*, it was limited to their discovery participation as opt-ins only, so there is written discovery, such as interrogatories and requests for production, that still needs to take place. Indeed, although FedEx took Granado's deposition in early February 2024 where she identified dozens of documents she had yet to produce pursuant to the opt-in limited questionnaire, that production still has yet to take place.

2

or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)-(B) (emphasis added).

District courts then often consider "(1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence." *Henderson*, 639 F. Supp. 3d at 486-87; *see Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972) ("The proper remedy in case of misjoinder is to grant severance or dismissal to the improper party if it will not prejudice any substantial right."); *Visendi v. Bank of Am.*, *N.A.*, 733 F.3d 863, 870-71 (9th Cir. 2013) ("Thus, if plaintiffs fail to meet the standard for permissive joinder, 'the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance.'" (citations omitted)).

A.    **Plaintiffs Do Not Satisfy Rule 20's Permissive Joinder Standard**

Here, because Plaintiffs are not properly joined under Rule 20, the Court should sever Plaintiffs' claims and create independent actions resulting in separate proceedings, trial, and judgments.

As an initial matter, numerous courts have observed that the "similarly situated" standard for conditional certification is "more elastic and less stringent than the requirements found in Rule 20." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996); *see also Halle v. W. Penn Allegheny Health Sys. Inc.,* 842 F.3d 215, 225, n.9 (3d Cir. 2016) ("[O]pt-in plaintiffs are held to a less stringent standard than under Rule 20."); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020) ("[J]oinder under Rule 20 requires, in addition to a common question of law or fact, that the plaintiffs assert a right to relief arising from 'the same transaction[ ] [or] occurrence[ ].' Fed. R. Civ. P. 20(a)(1)(A). No such condition exists in the text of the FLSA."). As such, "if a plaintiff fails to meet section 216(b)'s flexible elastic standard as

to a class of individuals, the plaintiff necessarily fails to satisfy Rule 20's stricter standard as to any individual in that class." *Yerger v. Liberty Mut. Grp., Inc.*, No. 5:11-CV-238-D, 2012 WL 4423499, at *2 (E.D.N.C. Sept. 24, 2012).

       1.    Plaintiffs do not assert any right to relief with respect to or arising out of the same transaction or occurrence

Plaintiffs do not assert any right to relief with respect to or arising out of the same transaction or occurrence. *See* Fed. R. Civ. P. 20(a)(1)(A). Before bringing this individual action, Plaintiffs were opt-ins to the *Claiborne* case. There, the *Claiborne* Plaintiffs voluntarily decertified their own collective, conceding that they could not prove they were in fact similarly situated for final certification. (*See Claiborne*, ECF No. 523.)[3] As FedEx has shown time and again across various jurisdictions, drivers like Plaintiffs had vastly different experiences working for different Service Providers. Plaintiffs worked for different Service Providers in different states; Plaintiffs were paid differently; Plaintiffs had different interactions and types of interactions with FedEx personnel; Plaintiffs drove different types of vehicles with different weights; and Plaintiffs worked different weekly hours. (*See e.g.*, Atwood Dep. 46:16–47:11, 147:5-19, 68:4–71:2, 73:2–74:11, excerpts attached as Ex. A; Atwood Ques., *Claiborne*, ECF No. 547-89; Granado Dep. 34:14–35:6, 160:5-21, excerpts attached as Ex. B; Granado Ques., *Claiborne*, ECF No. 549-33)

The two Plaintiffs in this case worked for four different Service Providers spanning various time periods. Atwood worked for two Service Providers in Tennessee allegedly from

---

[3] Moreover, even as opt-ins in *Claiborne*, Atwood's and Granado's claims were individual claims. *Cf. Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 726 (7th Cir. 2024) ("[A] collective action is no more than a consolidation of individual cases, brought by individual plaintiffs.") (internal citation omitted).

approximately 2013 to 2021[4], while Granado worked for two different Service Providers in Texas from approximately 2015 to 2024. (Atwood Ques. at 1, 4, *Claiborne*, ECF No. 547-89; Granado Ques. at 1, 4, *Claiborne*, ECF No. 549-33; *see also* Am. Compl. ¶¶ 3-4.) When the facts arise from different pay, working conditions, and locations, it cannot be said that they arose from the same transaction or occurrence.

Plaintiffs were paid differently from each other, and the payment method varied depending on the Service Provider. For example, Atwood claims he was paid a piece rate per stop by one Service Provider. (Atwood Ques. at 1, *Claiborne*, ECF No. 547-89.) From his second Service Provider, Atwood was paid a piece rate for some period of time, and then his pay changed to weekly pay. (*Id.* at 5.) Both Service Providers for which Granado worked paid her different weekly amounts for different types of duties and responsibilities. (Granado Ques. at 1, 4-5, *Claiborne*, ECF No. 549-33.)

Plaintiffs Atwood and Granado also testified that they had vastly different interactions with FedEx. For example, Granado testified that while she was working for her first Service Provider, Dwil Co., she spoke to FedEx personnel only if she needed help with directions in rural areas or to let them know at the end of the day that she had a damaged or undeliverable package. (Ex. B, Granado Dep. 34:14–35:6.) Similarly, while working for Jammin Delivery Inc. ("Jammin"), Jammin instructed Granado to come to someone at Jammin, rather than FedEx employees, for all issues. (*Id.* at 160:5-21.) The only occasions she would speak to FedEx personnel instead of her Service Provider were if she needed help finding packages or with incorrect addresses. (*Id.*) She testified that it was her Service Providers, not FedEx, who ran

---

[4] Unless Atwood performed non-driving work for his Service Providers, which he did not testify to doing at his deposition, this is incorrect and he actually stopped working for Service Providers in 2019. (*See* Atwood Summary Scanner and Vehicle Data, *Claiborne*, ECF No. 547-89.)

weekly safety meetings, hired all employees, and set drivers' routes and schedules. (*Id.* at 54:14-17, 60:4-7, 99:7-9, 267:15-268:6.)

On the other hand, Atwood claims he had regular interactions with FedEx personnel. (Ex. A, Atwood Dep. 46:16–47:11.) He testified that he called the terminal about once a week to get help delivering packages. (*Id.* at 147:5-19.) He claims that FedEx personnel came to him on several occasions to discuss misdelivered packages and, on two occasions, that his Service Provider informed him that FedEx was considering making his Service Provider fire him. (*Id.* at 68:4–71:2; 73:2–74:11.) On those occasions, claims Atwood, he spoke directly to FedEx personnel to try to resolve the situations. (*Id.*)

Additionally, Plaintiffs drove different types of vehicles, which is factually confusing yet legally relevant to the light vehicle exception to the federal Motor Carrier Exemption, discussed further below. Granado drove mostly light vehicles for Dwil Co., while she drove mostly heavy vehicles for her other Service Provider, Jammin Delivery Inc. (Granado Summary Scanner and Vehicle Data, *Claiborne*, ECF No. 549-33). Atwood drove mostly light vehicles for both of his Service Providers. (Atwood Summary Scanner and Vehicle Data, *Claiborne*, ECF No. 547-89.) The Court and jury would have to organize and understand the vehicles that each Plaintiff drove for each Service Provider for <u>each week of driving</u>[5], and then, without conflating that evidence, factor in the legal implications of the Motor Carrier Exemption. This is a complicated analysis for just one Plaintiff that necessarily become even more confused with two Plaintiffs who worked for multiple Service Providers using different types of vehicles and across different time

---

[5] Atwood worked as a driver for his Service Providers for approximately 189 weeks, while Granado worked as a driver for her Service Providers for over 337 weeks as of June 26, 2023. (*See* Atwood Summary Scanner and Vehicle Data, *Claiborne*, ECF No. 547-89; Granado Summary Scanner and Vehicle Data, *Claiborne*, ECF No. 549-33.) Upon information and belief, Granado continued to drive for her same Service Provider through September 2024.

periods. There is no reason to subject the Court or the jury to this sort of confusion that can be completely avoided by proceeding separately.

Plaintiffs also testified that they worked different weekly hours, including different overtime hours, and the evidence they offer in support conflicts with their testimony in varying ways. Atwood's questionnaire responses indicate that he worked "40+ hours most weeks" and worked "60+ hours" for "[m]any weeks" for Chattanooga Logistics, Inc. and "60+ hours" during peak season for Wolf Transport Inc. (Atwood Ques. at 2, 5, *Claiborne*, ECF No. 547-89.) However, Atwood admitted at his deposition that he switched to working only part-time for Wolf Transport, Inc. in approximately June 2018. (Ex. A, Atwood Dep. 37:6-9; 136:17-24.)

Granado's questionnaire responses indicate that she typically worked 60 hours per week and 75 hours per week during peak season for Dwil Co., which is in no way supported by the scanner data. (Granado Ques. at 2, *Claiborne*, ECF No. 549-33; Granado Summary Scanner and Vehicle Data, *Claiborne*, ECF No. 549-33 (showing many weeks where Granado was on duty less than 40 hours per week).) In contrast, Granado claims she worked 40 hours per week for Jammin Delivery (Granado Ques. at 4, 5, *Claiborne*, ECF No. 549-33.) In fact, Granado testified that she was not entitled to overtime for the time she has worked for Jammin Delivery, because she did not work more than 40 hours per week for that Service Provider (Ex. B, Granado Dep. 67:6-22), yet Plaintiffs continue to assert such a claim for that time anyway based on the allegations in their complaint (*see* Am. Compl. ¶ 4). The inherent discrepancies in hours Plaintiffs claimed to have worked, discrepancies that go to liability not just damages, further show that Plaintiffs' claims do not arise from the same transaction or occurrence.

     2.     No question of fact is the same for both Plaintiffs because the facts do not arise from the same transaction or occurrence

Because Plaintiffs' claims do not arise from the same transactions or occurrences, the Court need not even analyze whether a question of law or fact is common to both Plaintiffs. *See* Fed. R. Civ. P. 20(a)(1)(B); *see also e.g.*, *Blake v. Batmasian*, No. 15-81222-CIV, 2016 WL 7447253, at *6, n.7 (S.D. Fla. Sept. 15, 2016) (declining to consider whether there were any common questions of law or fact after finding that plaintiff failed to meet the first element of Rule 20(a).) And in any event, there necessarily is no common question of fact for the very reason just discussed that the facts do not arise from the same transaction or occurrence.

While both of Plaintiffs' claims are brought under the FLSA, "the mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact." *Adams v. City of Los Angeles*, No. CV1405685DMGFFMX, 2015 WL 13916597, at *2 (C.D. Cal. Apr. 6, 2015) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350, 1351 (9th Cir. 1997)). Moreover, any overlapping questions of law "pale in comparison to the particularized, individual inquiries that will be required to prove each of the named plaintiffs' claims." *Gatewood v. Koch Foods of Mississippi, LLC*, No. 3:07CV82-KS-MTP, 2009 WL 8642001, at *21 (S.D. Miss. Oct. 20, 2009) (decertifying collective action and severing the five named plaintiffs' claims, finding joinder improper).

### B.    The Third Circuit's Discretionary Factors Favor Severance

The Third Circuit's additional factors also favor severance. *See Henderson*, 639 F. Supp. 3d at 486-87. First, as discussed above, the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof. Second, severance promotes judicial economy because, despite Plaintiffs' participation as opt-in plaintiffs in *Claiborne*, this case has just been filed and, by severing claims now, the complications and

confusion of jointly litigating and trying unrelated claims with different factual and legal issues can be avoided. *Cf. Henderson*, 639 F. Supp. 3d at 487 (finding severance would not promote judicial economy when trial was scheduled in one month, coordinating logistics for incarcerated plaintiffs for multiple trials would be too difficult, and the claims were "succinct and easy" for the jury to understand).

While conferring regarding the identical misjoinder motion FedEx filed regarding the remaining named plaintiffs in the *Claiborne* case, Plaintiffs' counsel opposed severing the named plaintiffs' claims and conducting separate trials because, among other reasons, Plaintiffs' counsel recently tried a case "on behalf of [three] Uber drivers on their separate claims." But that trial, and subsequent second trial, resulted in two hung juries, which led the court to dismiss the case entirely after eight years. *See Razak v. Uber Techs., Inc.*, No. 16-573, 2024 WL 3584324 (E.D. Pa. Jul. 30, 2024). Plaintiffs' counsel's own experience highlights the inefficiency and waste of judicial resources of trying multiple claims for multiple different plaintiffs together. *See id.* at *1 ("A third jury trial would do nothing more than waste precious judicial resources."). This inefficiency and waste of resources and very real risk of mistrials can be avoided by severing Plaintiffs' claims now.

Third, none of the parties will be unduly prejudiced by severance, but all parties will be prejudiced by litigating all claims in one action. Plaintiffs will be prejudiced because of the materially differing facts between them, which could undermine their individual claims just as they could undermine FedEx's defenses. Because of the differing factual and legal issues in this case, the jury is likely to conflate issues and fail to distinguish between facts and claims. For example, as discussed above, if Plaintiffs' cases are tried together, then Atwood will likely testify about FedEx's purported direction and control over his work. (*See supra*, p. 6.) Whereas,

9

Granado will likely testify consistent with her deposition that she had little to no direction from FedEx. (*See supra*, p. 5-6.) Common sense tells us that, when considering Granado's joint employment claim, the jury will not ignore or compartmentalize Atwood's testimony but will instead apply these facts about purported control to Granado's claims, too. Or vice versa. Between the two different Plaintiffs and four different Service Providers, it is likely that jurors will conflate facts applicable to only one Plaintiff to the other—to the potential prejudice of all parties but in ways that none of the parties can predict ahead of a jury verdict.

### C.     After Decertification, Plaintiffs' Claims Should Be Severed

After a collective action is decertified or class certification fails, there is no automatic presumption that the individual claims should remain joined. In other words, "[w]hen a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs." *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010); *see also Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1301 (11th Cir. 2008) (affirming decertification of an FLSA collective action, dismissal of the opt-in plaintiffs, and severance of each of the named plaintiffs' claims into separate individual actions). There is no rational reason for this to be different just because Atwood and Granado have now brought their own separate case together.

For example, in *Acevedo*, the Fifth Circuit denied the plaintiffs' post-decertification joinder motion. 600 F.3d at 518. Approximately 800 current and former employees of Allsup's Convenience Stores, Inc. ("Allsup's") opted in to an FLSA action seeking overtime wages. *See id.* at 518. The district court decertified the case and dismissed the employees' claims. *See id.* Then, the employees brought a new action, seeking joinder of all dismissed employees into a single lawsuit. *See id.* The district court again dismissed the employees' claims because the employees "were not properly joined as plaintiffs in a single action." *Id.* The employees appealed, and the Fifth Circuit held that the district court did not abuse its discretion in denying

mass joinder of all employees (but erred in entirely dismissing the action as to the first-named

plaintiff). *See id.* The court focused on how, despite Allsup's company-wide policies, denying

joinder was appropriate because joinder did not facilitate judicial economy, and different

witnesses and documentary proof were required for the employees' claims. *See id.* at 522.

Further, despite these common policies, denying joinder was appropriate because

> the [employees] work or have worked across a network of more than 300 stores,
> each with its own manager responsible for implementing Allsup's policies. As
> Allsup's points out, certain plaintiffs stated in their depositions that they were told
> by their managers that working off the clock was forbidden, while others
> indicated that they were only asked to work off the clock by certain managers and
> not others. Consequently, working conditions do not appear to have been uniform
> at all Allsup's stores. The district court was within its wide discretion to conclude
> that trying these claims together would be too challenging logistically, given the
> divergent working conditions at each store and the different defenses applicable to
> each plaintiff's claims.

*Id.*

In *Alvarado v. City of Los Angeles*, the Ninth Circuit granted the defendant's post-

decertification motion to sever on very similar facts to those in the instant case. 720 F. App'x

889 (9th Cir. 2018). Approximately 2,500 Los Angeles Police Department (LAPD) officers

brought collective actions against the City of Los Angeles (the City), alleging that the City

violated the FLSA by failing to pay the officers for overtime work. *See id.* at 903. The district

court granted the City's motions for decertification because the officers were not "similarly

situated." *Id.* "Sub-groups of the original collectives then instituted 28 separate lawsuits, which

were assigned to 13 different district judges in the Central District of California. In every case,

the City filed a motion to dismiss on the basis of misjoinder. And in every case, this motion was

granted and all plaintiffs but for the named plaintiff were dismissed pursuant to Federal Rules of

Civil Procedure 20 and 21." *Id.* The plaintiffs appealed, and the Ninth Circuit affirmed the

decision. *Id.* In affirming the decision to sever the officers' claims, the Ninth Circuit explained,

"[the officers] have failed to satisfy Rule 20's permissive joinder standard. For example, [the officers] do not allege any greater connection between their claims than that the City's employees violated the FLSA in comparable ways, at various different times, and in various different divisions and bureaus. [The officers'] claims therefore are too factually disparate to arise out of the same transaction, occurrence, or series of transactions or occurrences." *Id.* at 904. The same is so here, where Plaintiffs allege only that FedEx (through Service Providers) violated the FLSA; however, their allegations span different times, states, and Service Providers, and involve many other factors and diverging facts, as discussed above.

Moreover, courts have come to the same conclusion in actions with smaller numbers of plaintiffs, still finding that the factual differences among the plaintiffs were too great. *See e.g.*, *Bedwell v. Amdocs, Inc.*, No. C 13-5565 SI, 2014 WL 3670550, at *2 (N.D. Cal. July 23, 2014) (denying joinder of three plaintiffs after court decertified a FLSA collective action); *Gatewood*, 2009 WL 8642001, at *21 (S.D. Miss. Oct. 20, 2009) (severing five named plaintiffs' FLSA claims because plaintiffs were "subject to different compensation practices of different supervisors in different locations"); *Bozek v. Wal-Mart Stores, Inc.*, No. 15-CV-10, 2015 WL 3818984, at *2-3 (N.D. Ill. June 17, 2015) (denying joinder of two plaintiffs after court decertified Title VII discrimination claim class action); *Blake*, 2016 WL 7447253, at *6 (denying motion to add two plaintiffs to individual plaintiff's FLSA action, finding that "Plaintiff has not made a sufficient allegation of a policy or pattern of unlawful violations to warrant joinder").

Throughout the *Claiborne* action, Plaintiffs' pointed to the Independent Service Provider Agreement and purported FedEx "policies and procedures" in an attempt to show that the opt-in plaintiffs were similarly situated; however, these bare bones allegations when considered with the many divergent facts of Plaintiffs' individual working experiences are not enough to justify

joinder. Moreover, the Independent Service Provider Agreements that each Service Provider signed are different. Granado's Service Provider, Jammin Delivery, Inc., signed an Independent Service Provider Agreement that contains a provision requiring Jammin Delivery to join or intervene as a defendant in any proceedings related to assertions made by its employees. (*See* Ex. C, Excerpts of Jammin's ISPA, Schedule L, § 2.3(F).) Similar language is not contained in the Independent Service Provider Agreements signed by Atwood's Service Providers.

Different witnesses and documentary proof will be needed for each Plaintiff, such as pay and hours information from their Service Provider employers, vehicle information (particularly where FedEx's records are lacking), station management witnesses that can testify to Plaintiffs' specific claims about the allegations of control from each Plaintiff, as well as fact witnesses from the Service Providers themselves.

## II.    ONCE SEVERED, THE COURT SHOULD TRANSFER PLAINTIFFS' CASES

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) is "intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The Third Circuit does not have a "definitive formula or list of . . . factors" for courts to consider when weighing the appropriateness of two venues. *Jumara*, 55 F.3d at 879. Instead, courts must analyze "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* The Third Circuit also identified a set of private interest and public interest factors

for courts to consider. *Id.* at 879–80. The private factors to consider include: (1) "[the] plaintiff's

forum preference as manifested in the original choice"; (2) "the defendant's preference";

(3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their

relative physical and financial condition"; (5) "the convenience of the witnesses—but only to the

extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the

location of books and records (similarly limited to the extent that the files could not be produced

in the alternative forum)." *Id.* at 879 (internal citations omitted). The public interest factors to

consider include: (1) "the enforceability of the judgment"; (2) "practical considerations that

could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty

in the two fora resulting from court congestion"; (4) "the local interest in deciding local

controversies at home"; and (5) "the familiarity of the trial judge with the applicable state law in

diversity cases." *Id.* 879–80 (internal citations omitted).

   Here, the private preference factors offset and all remaining factors weigh in favor of

transfer. Importantly, for the third private factor, Plaintiffs' claims arose at the places of their

employment with their Service Providers, none of which was in Pennsylvania.

   The remaining private factors weigh in favor of transfer, too. Trying the cases here is

inconvenient as the vast majority of evidence and witnesses is located in the states corresponding

to each Plaintiff. *See Idasetima v. Wabash Metal Prods., Inc.*, No. 01-197, 2001 WL 1526270, *2

(E.D. Pa. Nov. 29, 2001) (citations omitted) (finding convenience of witnesses "is a particularly

significant factor in a court's decision whether to transfer"); *Affymetrix, Inc. v. Synteni, Inc.*, 28

F. Supp. 2d 192, 203 (D. Del. 1998) ("Fact witnesses who possess first-hand knowledge of the

events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the

'balance of convenience' analysis.").

14

More importantly, not only is travelling inconvenient to the fact witnesses, but the witnesses are also legally unavailable, so the Court cannot command them to attend the trial and testify in open court. *See* Fed. R. Civ. P. 45(c)(1) (trial court cannot command witness who lives more than 100 miles from the trial court to appear at trial); *see also* Fed. R. Civ. P. 43(a) (witness's testimony must be taken in open court). Trying this case in the instant forum will require travel for dozens of individuals, including Plaintiffs, Service Provider witnesses, and FedEx witnesses (some of which may be former employees over whom FedEx cannot be deemed to have control over to have them appear), from the stations in those states, which will require travel greater than 100 miles. *Roller Bearing Co. of Am. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 389 (D. Conn. 2008) (holding that court's "inability to compel [a witness's] attendance weighs in favor of transfer to a forum where a large number of non-party witnesses reside").

The public interest factors also weigh in favor of transfer. The only factor that does not weigh in favor of transfer is the first factor, because the judgment will remain enforceable regardless of forum. But as discussed throughout this motion, the practical considerations that make trial easier, expeditious, and less expensive weigh in favor of transferring the cases to the states where Plaintiffs, witnesses, and evidence are located. Transfer will also cut down on any administrative difficulty and inherent congestion from trying either a two-person case involving entirely different sets of facts, or two individual trials in this same Court.

Thus, once the Court severs each Plaintiff's claims, the Court should transfer venue to each Plaintiff's corresponding state of employment with their Service Providers. However, even if the Court disagrees on transferring venue, that does not obviate the need for these two cases to be severed before this Court, for the reasons discussed above.

Dated: December 2, 2024                    Respectfully submitted,


                                           *s/ Jessica G. Scott*
                                           Jessica G. Scott (CO 37287) (*pro hac vice*)
                                           Wheeler Trigg O'Donnell LLP
                                           370 Seventeenth Street, Suite 4500
                                           Denver, CO  80202-5647
                                           Telephone:    303.244.1800
                                           Facsimile:     303.244.1879
                                           scott@wtotrial.com

                                           Joseph P. McHugh (PA 77489)
                                           Shanicka L. Kennedy (PA 88306)
                                           Federal Express Corporation
                                           1000 FedEx Drive
                                           Moon Township, PA  15108
                                           Telephone:   412.859.5917
                                           Telephone:   412.859.5792
                                           Facsimile:    412.859.5413
                                           joseph.mchugh@fedex.com
                                           shanicka.kennedy@fedex.com

                                           Attorneys for Federal Express Corporation,
                                           successor by merger to FedEx Ground Package
                                           System, Inc.

16

**CERTIFICATE OF SERVICE (CM/ECF)**

      I HEREBY CERTIFY that on December 2, 2024, I electronically filed the foregoing **DEFENDANT FEDERAL EXPRESS CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION ON MISJOINDER, CHANGE OF VENUE, AND SEPARATE TRIALS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

- **Sara R. Schalman-Bergen**
  ssb@llrlaw.com, courtssb@llrlaw.com

- **Shannon Liss-Riordan**
  sliss@llrlaw.com

- **Matthew Carrieri**
  mcarrieri@llrlaw.com

- **Jeremy Edward Abay**
  jabay@llrlaw.com

- **Harold Lichten**
  hlichten@llrlaw.com

*s/ Jessica G. Scott*